IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RASHAN-I: SAVAGE, SUI JURIS | : | |
| *Plaintiff* | : | |
| | : | |
| V. | : | CIVIL ACTION NO. 21-CV-4136 |
| | : | |
| THE CITY OF PHILADELPHIA, | : | |
| *et al.*, | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

**QUIÑONES ALEJANDRO, J.**                                              **OCTOBER 1, 2021**

Rashan-I: Savage, Sui Juris, who is also known as Rashan Savage, is a prisoner currently incarcerated at the Philadelphia Industrial Correctional Center ("PICC"). Savage filed this *pro se* civil action using the Court's preprinted form Complaint for use by prisoners alleging constitutional claims pursuant to 42 U.S.C. § 1983. Named as the Defendants are the City of Philadelphia, a PICC Correctional Officer named "Jennings," PICC Warden Michele Farrell, and Blanche Carney, the Commissioner of Prisons. The Defendants are sued in their individual as well as official capacities. Savage also seeks to proceed *in forma pauperis*. For the reasons that follow, the application to proceed *in forma pauperis* will be granted and Savage's Complaint will be dismissed in part with prejudice and in part without prejudice.

**I.       FACTUAL ALLEGATIONS**

Savage alleges that on September 3, 2021, he informed Defendant Jennings that he needed to use the prison law library. (ECF No. 2 at 4.)[1] He told Jennings, who he alleges oversees the

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system. The Court notes that the allegations Savage makes on pages 4-7 of his Complaint are essentially duplicated on pages 8-9.

1

law library but is untrained to do so, that he had not been able to use the law library since May 2021. (*Id.*) Jennings responded "I'll see what I can do" but, Savage asserts, she did nothing to let him use the library. (*Id.*) Savage also alleges that an inmate disturbance occurred at PICC on August 20, 2021 to protest the reduction in recreational time. (*Id.*) Savage asserts that inmates who refused to go back into their cells were sprayed with pepper spray and shot with rubber pellets. (*Id.*) He thereafter completed a statement about what he observed during the disturbance. (*Id.* at 9.) Since August 20, his unit has been on lock-down with no access to the commissary, phones, law library, or linen service.[2] (*Id.* at 4, 9.)

Warden Michele Farrell allegedly toured Savage's unit on June 25, 2021. (*Id.* at 5.) Savage confronted Farrell and demanded to use the law library. (*Id.*) Savage was "roughly hand-cuffed then stripped-searched" and escorted to a Restricted Housing Unit by a non-defendant Correctional Officer named Griffin "for failing to follow direct orders and being aggressive towards Warden." (*Id.*, *see also id. at* 22 (PICC Inmate Misconduct Report charging Savage with "disrespect, disturb, obscuring, refusal, vio rule" due to his refusal of orders to remove "sheets and blankets that he altered to cover the lights and windows of his cell.").)

Savage alleges that Defendants Jennings, Farrell, and Commissioner Carney misused their authority when they denied grievances and requests to staff asking for access to the law library. (*Id*. at 7.) He alleges he informed Carney that he acted as his own attorney in a criminal case brought against him (*id.*) but Carney only responded that, while the law library had been closed previously due to COVID-19 protocols, "[c]urrently, the law libraries have re-opened and you are

---

[2] The Court understands Savage's description of the August 20 disturbance and the allegation that he was placed in restricted housing to be included in his Complaint merely as background information to explain his claim that he was denied access to the prison law library since he does not allege that he himself was pepper sprayed or shot with a rubber pellet, and does not allege that any named Defendant was personally involved in these events. He also makes no specific allegation that his placement in restricted housing was itself a constitutional violation.

encouraged to sign up on your scheduled day to utilize the law library." She also wrote that she would "forward your grievance to the facility to ensure you are provided access to the law library when feasible." (*Id.* at 30.) Savage alleges that after the filing of this case, he "fear[s] retaliation from said prison officials or other prison officials or any employee of the Philadelphia Department of Prisons on State Road." (*Id.* at 7.)

Savage asserts that the failure to allow him to access the law library violated his First and Fifth Amendment rights to "religious and political freedom" as well as his due process rights. (*Id.* at 8.) He seeks to hold the City of Philadelphia liable as well on a *Monell* claim, but makes only the conclusory allegation that all of the Defendants acted in concert to violate his ability to access the legal resources and the Courts. (*Id.* at 10.) He alleges he has suffered an "actual injury . . . by depriving me of an arguable though not yet established claim." (*Id.* at 11.) He seeks money damages.

A review of public records indicates that Savage was arrested April 24, 2018 by the Philadelphia Police Department for receiving stolen property and firearms charges. *See Commonwealth v. Savage*, CP-51-CR-3098-2018 (C.P. Philadelphia). Savage was also arrested on April 27, 2018 by the Philadelphia Police Department on aggravated assault, firearms, and related charges. *See Commonwealth v. Savage*, CP-51-CR-3253-2018 (C.P. Philadelphia). Savage was originally represented by the Defenders Association in both cases, which filed an omnibus pretrial motion. At a pretrial conference held on September 6, 2018 in CP-51-CR-3253-2018, Savage was permitted to proceed *pro se* with Attorney Ellis Palividas appointed to act as standby counsel. *Id.* However, in CP-51-CR-3098-2018, Savage's request to represent himself was denied and Attorney Julieanne Bateman was appointed to represent him. The record reflects that she entered her appearance on Savage's behalf in both pending cases. Bateman participated in a

scheduling conference on August 16, 2021, and trial on the charges in both cases remains pending. *Id.*

## II.     STANDARD OF REVIEW

The Court grants Savage leave to proceed *in forma pauperis* since he appears unable to pay the filing fee for this case. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Shorter v. United States*, No. 20-2554, 2021 WL 3891552, at *5 (3d Cir. Sept. 1, 2021) ("'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Savage is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

### A.     Claims Against the City of Philadelphia and Official Capacity Claims

Savage has named as Defendants the City of Philadelphia, as well as Defendant Jennings, Warden Farrell, and Commissioner Carney in their official capacities. Each of these individuals is employed by the City of Philadelphia. Because claims against City officials named in their official capacity are indistinguishable from claims against the City, *see Kentucky v. Graham*, 473

U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)), the same legal standards apply to these claims. *Id.* ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.")

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*,, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult

choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

As the United States Court of Appeals recently stated,

> If the alleged policy or custom at issue is a failure to train or supervise (as it is here), the plaintiff must show that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339,357 (3d Cir. 1999)). "Ordinarily," this requires a plaintiff to identify a "'pattern of similar constitutional violations by untrained employees'" that "puts municipal decisionmakers on notice that a new program is necessary." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Otherwise, the plaintiff needs to show that failure to provide the identified training would "likely . . . result in the violation of constitutional rights" — i.e., to show that "the need for more or different training [was] so obvious." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

*Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020).

Savage has failed to allege a plausible basis for a *Monell* claim against the City and its employees in their official capacity. While citing excerpts from cases setting forth the *Monell* standard, he asserts only the conclusory allegation that all of the Defendants acted in concert to violate his ability to access the legal resources and the Courts. (ECF No. 2 at 10.) This is far from the specificity required by courts to state exactly what the custom or policy was that allegedly caused a constitutional violation. Although Savage's *Monell* claim is not plausible, because the Court cannot say at this time that he can never allege a plausible claim, the claims against the City and all official capacity claims will be dismissed without prejudice and Savage will be afforded an opportunity to return with an amended complaint if he is capable of curing the defects the Court has identified in these claims.

**B.   Individual Capacity Claims Based on Denial of Access to the Courts**

The Court understands Savage to be asserting constitutional claims against Defendant Jennings, Warden Farrell, and Commissioner Carney based on his inability to access the prison

law library during the emergency caused by the COVID-19 pandemic. The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, that provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Although Savage asserts that his inability to access the law library violated his First and Fifth Amendment rights to "religious and political freedom" as well as his due process rights, the inability of prisoners to access legal resources is generally analyzed as a First Amendment access to the courts claim. *See e.g., Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in prison law library to harm in underlying action). "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, a prisoner claiming that he was denied access to a prison law library must allege an injury traceable to the conditions of which he complains. *Diaz*, 532 F. App'x at 63. Furthermore, the right to access the

courts may be satisfied if the plaintiff has an attorney. *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (per curiam).

There are two types of access to courts claims, backward and forward looking. Forward-looking claims involve official action that "frustrates a plaintiff . . . in preparing and filing suits at the present time." *Harbury*, 536 U.S. at 413. The object of this type of suit "is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* Backward-looking claims involve those allegations that "cannot now be tried . . . no matter what official action may be in the future." *Id.* at 414.

Whether the claim is forward or backward looking, the elements of both claims are the same. A plaintiff raising an access-to-courts claim must plead: (1) a "nonfrivolous," "arguable" underlying claim; (2) the official acts obstructing the litigation; (3) "a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415. The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and must describe the 'lost remedy.'" *Monroe v. Beard*, 536 F.3d 198, 205-06 (3d Cir. 2008). The United States Supreme Court has explained that in the context of alleging the underlying claim that the plaintiff was prevented from pursuing, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued [.]" *Harbury*, 536 U.S. at 417-18; *see also Crisano v. Grimes*, Civ. A. No. 19-1612, 2021 WL 120943, at *12 (E.D. Va. Jan. 12, 2021) (noting in either a forward looking or backward looking access to courts claim, "the underlying cause of action, whether anticipated or lost, *is an element that must be described in the complaint*, just as much as allegations must describe the official acts frustrating the litigation.") (emphasis in original).

Accepting as true for purposes of statutory screening that Savage is responsible for his own defense in at least one of his cases, he has not alleged plausibly that there is a "nonfrivolous," "arguable" underlying claim for which he cannot receive a remedy in his criminal cases. Rather, he asserts insufficiently only that the Defendants are "depriving me of an arguable though not yet established claim." (ECF No. 2 at 11.) The public record calls into question whether a remedy is unavailable to him since the criminal charges against Savage are still pending. *See generally Harbury*, 536 U.S. at 413 ("There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element."). Moreover, his bald allegation that his claim is arguable falls far short of alleging the underlying claim as an element of his access to courts claim. Accordingly, this claim is also subject to dismissal under 28 U.S.C. § 1915(e)(2)(B). This claim will also be dismissed without prejudice and Savage will be afforded the opportunity to reassert the claim in an amended complaint if he can allege plausibly how his alleged inability to access the prison law library has caused a constitutional injury.

  **C.**  **Claims Based on Grievances**

Savage contends that Defendants Jennings, Farrell, and Carney misused their authority when they denied grievances and his requests to staff asking for access to the law library. (*Id*. at 7.) Claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Accordingly, the facts alleged by Savage about grievances do not give rise to a plausible basis for a constitutional claim and will be dismissed with prejudice.

### D. Claims Based on Being Handcuffed and Strip-searched

Savage asserts he was "roughly hand-cuffed then stripped-searched." This occurred because he allegedly failed to follow direct orders and acted aggressively towards Warden Farrell. While it is unclear whether Savage makes this allegation in support of a separate claim, construing the Complaint liberally, the Court will deem the allegation an attempt to state an excessive force claim.

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees like Savage. *Jacobs v. Cumberland Cty.*, 8 F.4th 187, 193-94 (3d Cir. 2021) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).[3] In *Jacobs*, the United States Court of Appeals for the Third Circuit noted that in *Bell* the Supreme Court explained that "pretrial detainees, who have not been convicted of any crimes, retain *at least* those constitutional rights that we have held are enjoyed by convicted prisoners." *Id.* at 194 (citing *Bell*, 441 U.S. at 545 (emphasis added). Following *Bell*, in *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court explained that it was "clear" that the Fourteenth Amendment protects pretrial detainees from "the use of excessive force that amounts to punishment." *Graham*, 490 U.S. at 395 n.10.

To state a due process violation based on excessive force, a detainee must allege facts to suggest plausibly that "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the

---

[3] The *Jacobs* Court noted that the United States Supreme Court has not yet determined whether pretrial detainees can bring excessive-force claims under the Fourth Amendment. *Id.* at 194, n.4 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 408 (2015) (Alito, J., dissenting)).

severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397. This list is not exclusive. *Id.*

Savage's allegations do not suggest that the force used was objectively unreasonable based on his conclusory allegation that he was "roughly" handcuffed. His bare allegation that the process was "rough" does not push the allegation past the plausibility threshold since he fails to allege he suffered any injury from his treatment, or otherwise describe how his treatment was rough. Neither does the allegation that he was strip searched when moved to the RHU satisfy the pleading standard since conducting such searches has been found to be constitutional in the pretrial detention setting. *See Florence v. Board of Chosen Freeholders of the County of Burlington,* 566 U.S. 318, 223-333-34, 339 (2012) (holding constitutional a prison policy of strip searching every inmate entering the general population, "regardless of the circumstances of the arrest, the suspected offense, or the detainee's behavior, demeanor, or criminal history."); *see also Millhouse v. Arbasak*, 373 F. App'x 135, 137 (3d Cir. 2010) (citing *Bell*); *Jones v. Luzerne County Corr. Facility*, Civ. A. No. 10-359, 2010 WL 3338835, at *8 (M.D. Pa. 2010) ("When a prisoner moves through restricted areas of a correctional facility, it is not unreasonable for staff to check for contraband via visual body cavity searches upon the prisoner's return." citing *Millhouse*). Further, strip searches can be conducted by prison officials without probable cause. *Jones*, 2010 WL 3338835, at *8 ("[I]nmates do not have a right to be free from strip searches."). Accordingly, to the extent that Savage's allegation that he was roughly handcuffed and strip searched are intended to assert a separate claim for excessive force, the claim is dismissed. Savage will be permitted to attempt to amend this claim as well to cure the defects the Court has identified.

      E.    **Claims Based on Retaliation**

Savage alleges that after the filing of this case he fears retaliation from the Defendants "or other prison officials or any employee of the Philadelphia Department of Prisons on State Road."

(ECF No. 2 at 7.) To the extent Savage seeks to assert a claim based on retaliation against a named Defendant, this claim is also not plausible. In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, No. 19-2580, 2020 WL 2125780, at *3 (3d Cir. May 5, 2020).

While filing a complaint in court is constitutionally protected conduct, Savage does not allege he suffered an adverse action, either by any named Defendant or any other prison official. Rather he only alleges he fears he will be retaliated against. This is not sufficient to allege a plausible retaliation claim. Savage may amend this claim as well if he is able to identify a specific individual who retaliated against him because he filed this action.

## IV. CONCLUSION

For the reasons stated, Savage's claim based on the handling of his grievances is dismissed with prejudice. All other claims against all Defendants are dismissed without prejudice. Savage may file an amended complaint to attempt to cure the defects the Court has identified in the claims dismissed, without prejudice. An appropriate Order follows containing additional information about amendment.

*NITZA I. QUIÑONES ALEJANDRO*, J.